STATE of Minnesota, Respondent,

v.

Allan John PTACEK, Appellant.

No. A08–0814.

Court of Appeals of Minnesota.

June 9, 2009.

Lori Swanson, Attorney General, Peter R. Marker, Assistant Attorney General, St. Paul, MN, Douglas L. Ruth, Steele County Attorney, Owatonna, MN, for respondent.

Carson J. Heefner, Samuel A. McCloud, McCloud & Heefner, Shakopee, MN, for appellant.

Considered and decided by PETERSON, Presiding Judge; KLAPHAKE, Judge; and HARTEN, Judge.*

## OPINION

PETERSON, Judge.

In this appeal from convictions of first-degree criminal sexual conduct in violation of Minn.Stat. § 609.342, subd. 1(b), (g) (2004), appellant argues that the district court erred by refusing to allow his expert

witness to testify regarding the effects of an alcoholic blackout and by incorrectly instructing the jury on the definition of sexual penetration. We affirm.

## FACTS

Appellant Allan John Ptacek is T.L.'s uncle. On April 7, 2006, T.L. was at appellant's house. At around 10:30 or 11:00 p.m., appellant offered a beer to T.L., who was fifteen years old at the time. At some point during the night, appellant turned on a pornographic movie. According to T.L., appellant "was drinking more and more, and he was starting to stumble a little bit." When the movie started, T.L. went to the bathroom. Appellant entered the bathroom and tried to convince T.L. to allow appellant to perform oral sex on T.L. T.L. repeatedly told appellant "no" and then left the bathroom.

T.L. went to the bathroom again later that night. Appellant entered the bathroom and again began pressuring T.L. to allow appellant to perform oral sex on T.L. Appellant pressured T.L. for about 20 to 30 minutes until T.L. could not handle the pressure and gave in. Appellant then removed T.L.'s pants and licked his penis a couple of times. T.L. told appellant to stop, and appellant stopped. Appellant then told T.L. that if he told anybody, he would not be allowed back to see his cousin. According to T.L., appellant had consumed about 12 beers at the time of the incident.

Appellant was charged with first-degree criminal sexual conduct in violation of Minn.Stat. § 609.342, subd. 1(b), (g) (2004); and furnishing alcohol to a minor in violation of Minn.Stat. § 340A.503, subd. 2(1) (2004). Appellant provided notice that he

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

intended to raise intoxication as a defense and call Mark W. Olson, a chemical-dependency counselor, as an expert. In a hearing on pretrial motions, appellant's attorney stated that based on Olson's work experience as a counselor and personal experience as an alcoholic, he intended to have Olson testify regarding "alcoholic blackouts, how they occur, [and] what can happen during an alcoholic blackout." Appellant's attorney argued that based on the facts of the case, Olson would testify about whether appellant was in an alcoholic blackout at the time of the incident, which would go to the issue of whether appellant could formulate intent.

The court allowed Olson to present offer-of-proof testimony before it decided whether to allow his testimony at trial. After hearing this testimony, the district court did not allow Olson to testify about the effects of an alcoholic blackout or whether appellant was in a blackout but allowed him to testify about what blackouts are and the factors that cause them.

At trial, the parties stipulated that (1) appellant put his tongue on T.L.'s penis; (2) T.L. had not reached his sixteenth birthday; (3) appellant has a significant relationship with T.L. because he is his uncle; and (4) the act occurred on April 7, 2006, in Steele County. Appellant testified that he had no memory of the events.

When instructing the jury on the elements of first-degree criminal sexual conduct, the district court stated, "Fellatio constitutes sexual penetration if there is any contact between the penis of one person and the mouth, tongue or lips of another person." Appellant objected to this instruction. The jury found appellant guilty as charged. This appeal followed.

## ISSUES

1. Did the district court abuse its discretion when it did not allow expert testimony about the effects of an alcoholic blackout and whether appellant was in an alcoholic blackout?

2. Did the district court correctly state the law when it instructed the jury on the definition of sexual penetration?

## ANALYSIS

### I.

▆▆▆▆ Appellant argues that the district court erred by refusing to allow his expert witness to testify regarding the blackout effects of alcohol. "The admission of expert testimony is within the broad discretion accorded a [district] court, and rulings regarding materiality, foundation, remoteness, relevancy, or the cumulative nature of the evidence may be reversed only if the [district] court clearly abused its discretion." *State v. Ritt*, 599 N.W.2d 802, 810 (Minn.1999) (quotation and citation omitted).

The primary issue at trial was whether appellant's intoxication rendered him unable to form intent:

An act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind.

Minn.Stat. § 609.075 (2004). "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Minn. R. Evid. 702. Appellant argues that the jury was not aware of the effects of alcohol and, therefore, the district court should have

allowed Olson to testify regarding "his opinion that an en bloc blackout results in the individual operating in an 'unconscious state,' and that an individual experiencing an en bloc blackout cannot formulate specific intent."

The district court's rationale for not allowing Olson's testimony was that the relevant issue was not whether appellant could recall the events of the night but whether appellant was capable of forming intent, and Olson's testimony would be elicited to show that appellant lacked the capacity to form intent, which is impermissible under Minnesota law. The district court also determined that Olson's testimony was speculative and not based on hard science and that the existence of a blackout state was a credibility determination for the jury. The court allowed Olson to testify generally regarding the two types of blackouts—en bloc and fragmentary—and the factors that cause them but did not allow him to testify as to his opinion of whether appellant was in an en bloc blackout at the time of the sexual assault, the ability of a person in a blackout to know whether what he is doing is right or wrong, and whether a person's brain is functioning at a conscious level while in a blackout.

The general rule established by the supreme court "is that expert psychiatric testimony on whether a defendant was capable of forming the requisite mens rea for the crime charged is admissible only in the second phase of a bifurcated trial when the defendant pleads not guilty by reason of insanity." *State v. Griese*, 565 N.W.2d 419, 425 (Minn.1997). "[J]urors must look to 'what a defendant says and does' to determine whether a defendant acted with the requisite intent." *Id.* (quoting *State v. Provost*, 490 N.W.2d 93, 98 (Minn.1992)).

Moreover, because most jurors have some experience with mental illness and intoxication, expert psychiatric testimony as to the effects of those conditions is also generally inadmissible.[1] Although expert testimony on a person's blood alcohol content and on the fact of intoxication is admissible, expert testimony on how this intoxication may have impaired a defendant's capacity to form specific intent is inadmissible diminished capacity testimony.

*Id.* (citation omitted).

The district court instructed Olson not to testify that "a brain isn't functioning at a conscious level in a blackout state." It also instructed him as follows:

I don't want you to give an opinion whether there was an en bloc blackout or a fragmentary blackout in this case. I don't want you to give an opinion that people do things in blackouts that they normally wouldn't do under normal circumstances. I don't want you to give any opinion that people seek treatment after these events. I don't want you to talk about OCB, your coined phrase of out-of-character behavior. And I don't want you to try to estimate or guesstimate a blood alcohol concentration of [appellant] or what the blood alcohol concentration needs to be in order to get it a blackout state.

The testimony excluded by the district court would have directly related to the effects of intoxication on appellant's ability to form specific intent and, therefore, it is prohibited under *Griese*. The district court did not abuse its discretion when it limited the scope of Olson's testimony to the general types of alcoholic blackouts and the factors that cause them.

1. The supreme court recognized two possible exceptions to this general rule in *Provost*, 490 N.W.2d at 103–04, but neither exception applies in this case.

## II.

 Appellant argues that the district court erred in instructing the jury on the elements of first-degree criminal sexual conduct. District courts have broad discretion in the selection of language for the jury instructions. *State v. Baird,* 654 N.W.2d 105, 113 (Minn.2002). Jury instructions must be viewed in their entirety to determine whether they fairly and adequately explain the law of the case. *State v. Flores,* 418 N.W.2d 150, 155 (Minn. 1988). If the instructions correctly state "the law in language that can be understood by the jury, there is no reversible error." *State v. Peou,* 579 N.W.2d 471, 475 (Minn.1998).

 Construction of a criminal statute is a question of law, which we review de novo. *State v. Colvin,* 645 N.W.2d 449, 452 (Minn.2002). The object of statutory interpretation is to determine and give effect to the legislature's intent. Minn. Stat. § 645.16 (2008). When the legislature's intent is clearly discernible from a statute's plain and unambiguous language, the court interprets the language according to its plain meaning without resorting to other principles of statutory construction. *State v. Kelbel,* 648 N.W.2d 690, 701 (Minn.2002). Penal statutes must be construed strictly with any reasonable doubt concerning legislative intent resolved in the defendant's favor. *State v. Olson,* 325 N.W.2d 13, 19 (Minn.1982).

A person is guilty of first-degree criminal sexual conduct if he "engages in sexual penetration with another person" and (1) "the complainant is at least 13 years of age but less than 16 years of age and the actor is more than 48 months older than the complainant and in a position of authority over the complainant," or (2) "the actor has a significant relationship to the complainant and the complainant was under 16 years of age at the time of the sexual penetration." Minn.Stat. § 609.342, subd. 1(b), (g) (2004). "Sexual penetration" is defined in part to mean "any of the following acts committed without the complainant's consent, ... sexual intercourse, cunnilingus, fellatio, or anal intercourse." Minn.Stat. § 609.341, subd. 12(1) (2004). The statute does not define "fellatio."

The district court instructed the jury, "Fellatio constitutes sexual penetration if there is any contact between the penis of one person and the mouth, tongue or lips of another person."[2] Appellant contends that the district court's definition is inconsistent with common usage and the dictionary definition of fellatio. Appellant argues that because fellatio is reasonably susceptible to more than one meaning, any ambiguity must be resolved in his favor.

When we construe a statute, "words and phrases are construed ... according to their common and approved usage" unless doing so "would involve a construction inconsistent with the manifest intent of the legislature." Minn.Stat. § 645.08(1) (2008). In ascertaining the legislature's intent, we presume that "the legislature intends the entire statute to be effective and certain." Minn.Stat. § 645.17(2) (2008).

The dictionary defines "fellatio" as "[o]ral stimulation of the penis." *The American Heritage Dictionary of the English Language* 670 (3d ed.1992). "Oral" is defined as "[o]f or relating to the mouth." *Id.* at 1271. "Mouth" is defined as "[t]he cavity lying at the upper end of the alimentary canal, bounded on the outside by the lips and inside by the oropharynx and containing in higher vertebrates

---

2. The district court's definition of "fellatio" was taken directly from the criminal jury instruction guides. *See* 10 *Minnesota Practice,* CRIMJIG 12.05 (2006).

the tongue, gums, and teeth." *Id.* at 1181. Because the tongue and lips are both part of the mouth, any stimulation by the mouth, tongue, or lips is oral stimulation.

Appellant argues that for oral stimulation of the penis to occur, the penis must actually be stimulated and, therefore, contact without stimulation is not fellatio. But the statutory definition of "sexual penetration" is directed toward acts, not responses to acts. The statute states that "'[s]exual penetration' means any of the following *acts* committed without the complainant's consent" and then includes fellatio in the list of acts. Minn.Stat. § 609.341, subd. 12(1) (emphasis added). If contact without stimulation is not fellatio, whether an act was sexual penetration would depend on the response to the act, and, depending on the response, exactly the same act could be sexual penetration in one instance but not in another. We do not believe that the legislature could have intended such a result when it enacted a statute that prohibits certain acts. Therefore, we conclude that even if appellant is correct that the common meaning of fellatio does not include contact without stimulation, that construction does not apply to Minn.Stat. § 609.341, subd. 12(1), because it is inconsistent with the manifest intention of the legislature.

## DECISION

The district court did not abuse its discretion when it excluded expert-witness testimony that would have related directly to appellant's ability to form intent. The district court correctly stated the law of the case when it instructed the jury on the definition of sexual penetration.

**Affirmed.**