## STATE *v.* EDWARD BRODERICK.

*Larceny.   R. L. s.* 4141.  *Cross-Examination of Respondent.*

1.  Under R. L. s. 4141, the respondent may be convicted of a felony and sentenced to the State prison, *whatever* the value of the property stolen.

2.  When a respondent becomes a witness in his own behalf, he may on the cross-examination be discredited by injuring his character, but the evidence so elicited must be confined to this purpose alone, and cannot be generally considered by the jury in determining the question, guilty or not guilty, when the respondent has not put his character in issue.

This was an indictment under R. L. s. 4141, for the larceny of a blanket of the value of two dollars, placed for use in traveling in the owner's carriage.   Trial by jury at the December Term, 1888, Ross, J., presiding.   Verdict, guilty.

The evidence on the part of the State tended to show that this blanket had been stolen from the carriage on the evening of August 27, 1887, and had been found Oct. 5, 1887, at the house of one Mrs. Lahey in the State of New York, where it had been left by the respondent in company with one Kelley.   The respondent claimed that he had gone to the lake the night before with Kelley, and that he first saw the blanket in the possession of Kelley while on the way there, and that he did not know where Kelley got the blanket; and it was for the purpose of showing the character of his connection with Kelley on the occasion of this trip that he offered the evidence in respect to his conversations with Kelley while on the way there.

The respondent requested the court to charge the jury that under the section on which the indictment was predicated no conviction could be had for larceny, other than petit larceny, unless the value of the property was seven dollars, and that he could only be convicted of petit larceny in this case since the alleged value of the property was only two dollars.   But the court refused to so hold, and the respondent was convicted generally.

ADDISON COUNTY,

The respondent was a witness on his own behalf, and on his cross-examination the State was permitted to show that he was intoxicated on the night in question; that he had served out part of a sentence in the Reform School, and two sentences in the House of Correction, and that on the evening of his trip to the lake he took his father's horse against his express command. The respondent did not in any way put in evidence his own character. Upon the subject of the presumption of innocence the court charged the jury as follows :

" This has not been pressed before you, but this respondent starts out with the presumption of innocence, and that is one reason why this measure of proof is required, and as I said to the other panel a few days ago, that presumption of his innocence is weighty or light in weight in proportion as you find, from all the testimony and everything the character of the respondent to be. Some people have that character that the presumption of innocence is very strong, what is shown of their character, very great, and it takes a great deal of testimony to overcome it and establish the charge by this measure so you would not doubt it. Others less weighty, and it is for you to inquire into all this testimony as to what you believe in reference to this man, how much weight you will give this presumption of innocence in connection with the other proof, how much motive it would take to induce him to commit these acts, and you are to look all this through carefully."

*W. H. Bliss*, for the respondent.

The testimony of Barnes should have been admitted to show the relation between respondent and Kelley, and as a part of the *res gestæ*. 2 Bish. Crim. Proc. (3d Ed.) 745 ; *Engleman* v. *State*, 2 Ind. 91 ; *Commonwealth* v. *Bell*, 102 Mass. 163 ; 1 Bish. Crim. Proc. (3d Ed.) ss. 1083 to 1087; *State* v. *Goodrich*, 19 Vt. 116 ; *Danforth* v. *Streeter*, 28 Vt. 490 ; *State* v. *Howard*, 32 Vt. 380 ; *Eddy* v. *Davis*, 34 Vt. 209 ; *Nash* v. *Doyle*, 40 Vt. 96 ; *State* v. *Daley*, 53 Vt. 442.

State *v.* Broderick.

The charge of the court as to the effect to be given the admissions of the respondent as to his own character was wrong. The character of the respondent had not been put in issue by him, and hence could not be by the State. 1 Bish. Crim. Proc. ss. 1112, 1119; *State* v. *Lapage*, 57 N. H. 245; *People* v. *White,* 24 Wend. 520; 1 Nat. Law Review, 461; 1 Bish. Crim. Proc. ss. 1120, 1123, 1124; *State* v. *Hannett*, 54 Vt. 87; *People* v. *Crapo*, 76 N. Y. 288; 1 Bish. Crim. Proc. s. 1185; *Adams* v. *People*, 9 Hun. 89; *Fletcher* v. *State*, 49 Ind. 124; 1 Nat. Law Review, 467, 468.

Under R. L. s. 4141, the respondent cannot be convicted unless the value of the property is as much as seven dollars. R. L. s. 4138; Bish. Stat. Crimes, ss. 194, 220, 225; *State* v. *Lovett*, 3 Vt. 110; *State* v. *Cooper*, 16 Vt. 551.

*C. M. Wilds*, State's Attorney, for the State.

The conversations between respondent and Kelley were immaterial. *Commonwealth* v. *Chabbuck*, 1 Mass. 144; 1 Bish. Crim. Proc. ss. 1070, 1248.

The discreditable facts drawn from the respondent on cross-examination might properly go to his general character. This is the rule in civil cases. *Fire Asso.* v. *Bank*, 54 Vt. 657.

The opinion of the court was delivered by

Rowell, J. To rebut any presumption that the respondent was fleeing with stolen goods, and as a part of the *res gestæ* to characterize his and Kelley's trip, the respondent offered to show by Barnes, that when the latter left the others, to return with the team, the respondent and Kelley quarreled, and that Kelley found fault because he had paid the respondent for carrying him to the lake, and insisted that he should do it.

As the possession of stolen goods is a fact from which complicity in the larceny of them may be inferred, all the circumstances attending the possession and explanatory of it may be shown. But the fact that Kelley and the respondent quarreled would not have shed any light upon the character of the possession of the blanket, and so was properly excluded.

What Kelley said about his having paid the respondent to carry him to the lake was not competent, as it was mere narrative of a past transaction. And what he said by way of insisting that he should carry him is no better, as it was but another way of saying that he had agreed to do it.

This indictment is founded on s. 4141 of the statute, which makes it a State's prison offense to steal clothing, cloth, yarn, or wool, exposed for drying or bleaching, or clothing, blankets, or robes, used or placed for use in travelling in a vessel, car, or vehicle, "although the value of the property does *not* exceed seven dollars." Section 4137 prescribes the same penalty for larceny generally, "if the money or other property *exceeds* seven dollars in value." By s. 4138, stealing is petit larceny only, "if the money or other property stolen does not exceed seven dollars in value."

It is contended that s. 4141 does not embrace cases of stealing property of less than seven dollars in value, but only cases of property of that value or more; and that this statute, being penal and in derogation of the common law, should be most strictly construed, if necessary to that interpretation.

The rule that such statutes are to be strictly construed, has come to mean that they, like all other statutes, are to be fairly construed according to the legislative intention, courts refusing on the one hand to extend them to cases not clearly embraced within them, and on the other, to curtail their plain and obvious meaning by verbal nicety, forced construction, or equitable interpretation.

It is clear that the purpose of that section is, to make it felony to steal the property therein mentioned, in the circumstances mentioned, *whatever* its value.

The construction contended for would involve the absurdity of making that enactment hang upon a cent; for without it, if the property stolen exceeds the value of seven dollars by only a cent, precisely the same penalty is prescribed as by this section; and if the minimum is seven dollars, then the sole purpose of this statute is to increase by a penny only the chances of

sending a thief to State's prison. This can by no means be the purpose; but it is rather to punish more severely this kind of petty thieving, so annoying to the victim and so savoring of depravity.

As the respondent was a witness in his own behalf, it was competent to shake his credit by injuring his character. In this respect he stood like any other witness. But as he alone could put his character in issue as bearing on the question of guilty or not guilty and did not do it, the evidence of bad character elicited on cross-examination could not be used to show guilt, but only to shake his credit; for conceding what is contended for, that the presumption of innocence is not of equal weight as evidence in respect of all men, but weighty or light according to the character disclosed by the evidence, yet, the evidence must come in in a way to make it admissible against character as affecting that presumption, before it can be used for that purpose. And here lies the error of this charge; for by it the jury were allowed to consider all the testimony " in reference to this man," in determining what weight they would give to the presumption of innocence, and thus, in effect, to consider the evidence of bad character as tending primarily to show guilt. This is but the ordinary case of evidence properly in the case for one purpose being improperly used for another purpose. *Adams* v. *The People,* 9 Hun. 89, is in point. See also Bish. Crim. Proc. s. 1185.

*Exceptions sustained, verdict set aside, and case remanded for new trial.*