STATE *v.* LATHROP H. BALDWIN.

May Term, 1937.

Present: POWERS, C. J., SLACK, MOULTON and SHERBURNE, JJ., and SHIELDS, Supr. J.

Opinion filed October 5, 1937.

*Lawrence & O'Brien* for the respondent.

*A. J. Spero,* State's attorney, for the State.

146

Moulton, J. The respondent has been convicted under P. L. 8651, providing that "a person of whom an oath is required by law, who wilfully swears falsely in regard to any matter or thing respecting which such oath is required, shall be guilty of perjury." There are two counts in the information, each charging a different oath. The oaths in question were taken by him as treasurer of the Marble Savings Bank in verification of two special reports of the assets and liabilities of the bank, called for by the commissioner of banking and insurance of this State. As both counts stand alike in all respects, it will be convenient to consider them together.

The respondent excepted to the denial of his motion for a directed verdict of not guilty, made upon several grounds, the first of which is that the oaths taken by him were not required by law.

At common law a charge of perjury could be made only upon an oath lawfully administered in a proceeding before a court of justice (4 Blackstone Comm. 137), but by statute in this State as elsewhere, the offense has been enlarged to include false oaths taken in other situations. *State* v. *Rowell,* 70 Vt. 405, 408, 409, 41 Atl. 430; *State* v. *Smith,* 63 Vt. 201, 208, 22 Atl. 604. It is, indeed, a general principle that the charge cannot be supported upon an oath, however false, which is not required or authorized by some provision of law, even though the official before whom it is taken is empowered to perform the ministerial act of administering it. *U. S.* v. *Dupont,* 176 Fed. 823, 824; *State* v. *Larson,* 171 Minn. 246, 249, 213 N. W. 900, 901. It is said that the oath must be material, as well as the matter sworn to. *Beecher* v. *Anderson,* 45 Mich. 543, 552, 8. N. W. 539, 543. Here, the principle has been crystallized in the statute, P. L. 8651, which provides that the oath must be required by law and which, being penal, must be construed strictly, although, of course, fairly and in accordance with the legislative intent. *Guild* v. *Prentis,* 83 Vt. 212, 216, 74 Atl. 1115, Ann. Cas. 1912A, 313; *In re Demarso,* 77 Vt. 445, 447, 61 Atl. 36; *State* v. *Broderick,* 61 Vt. 421, 424, 17 Atl. 716. We must, therefore, consider, whether the oaths sworn to by the respondent in these instances were required by some provision of statute law.

By P. L. 6710 every bank must make an annual report to the commissioner of banking and insurance, showing accurately the

condition thereof as it was at the close of business on June 30, embracing certain particulars, or such of them as the commissioner prescribes. By P. L. 6711 the commissioner is given authority to prescribe the form of such annual reports. By P. L. 6712, ''At any time, he [the commissioner] may require from a bank a special report containing such information relating to its affairs as he requests; and the annual reports, and such special reports, if requested, shall be subscribed and sworn to by the president and treasurer of the bank, or in the absence of either, by the officer acting in his stead.'' It is with the last quoted section that we are especially concerned.

The two special reports, as of the close of business on June 29, 1935, and November 1, 1935, respectively, were made upon printed forms supplied by the commissioner and sent by him to the Marble Savings Bank. At the bottom of each form was a dotted space for signature with the word, ''Treasurer,'' printed after it. Below this was a printed form of oath, with blanks for the name of the bank, a dotted space preceding the printed word, ''Treasurer,'' for the insertion of the name of that official, another such space, with ''Treasurer'' following it for the signature to the oath, and appropriate blanks for the designation of the county and the name of the notary public. Each form of report, when received by the bank, was accompanied by a mimeographed letter from the commissioner. The first letter stated: ''Enclosed please find'' the statement form, and ''Kindly return to this office not later than July 10, 1935.'' The other read: ''Enclosed you will find blanks for report of condition at the close of business November 1, 1935. Please complete same and return one copy to this office not later than November 12th.'' The forms were duly completed, signed by the respondent as treasurer at the designated place, and sworn to by him, in the same capacity, ''to the best of his knowledge and belief,'' before a notary public. No other officer of the bank signed or swore to the report, and there was no space thereon for any other signature or verification. Neither was there any request by the commissioner for an oath by anyone, except insofar as such request might be implied from the sending of the blank reports, containing the jurats, and in one instance, the direction to ''complete'' the form.

█ █ We must read P. L. 6712 in connection with P. L. 6713, since the two sections are *in pari materia*. The latter pre-

148

scribes a forfeiture upon the bank for the failure to report to the commissioner as required by the preceding section. P. L. 6712 is, therefore, penal in nature. *Marter* v. *Repp*, 80 N. J. Law, 530, 77 Atl. 1030, 1031, aff. 82 N. J. Law, 531, 81 Atl. 1134; 3 Bl. Comm. 161. Any doubt concerning its interpretation is to be resolved in favor of the person claimed to be delinquent thereunder. *Comm.* v. *Exeter*, 243 Pa. 155, 89 Atl. 968, 971. If there is an ambiguity which admits of two reasonable and contradictory constructions, that one which operates in favor of the person accused under its provisions is to be preferred. *Speeter* v. *U. S.*, 42 Fed. (2d) 937, 941; *People* v. *Lockhart*, 242 Mich. 491, 219 N. W. 724, 725.

As we have seen, P. L. 6712 provides that "* * * the annual reports, and such special reports, if requested, shall be subscribed and sworn to by the president and treasurer of the bank, * * * " There are two possible constructions of this language: (1) The special reports shall be sworn to only if the commissioner requests them to be under oath, and (2) if the commissioner requires a special report, it shall be under oath.

In the interpretation of statutes the fundamental rule is to ascertain and give effect to the intention of the Legislature (*In re Woolley's Estate*, 96 Vt. 60, 64, 117 Atl. 370), and if it can fairly be done, a statute must be so construed as to accomplish the purpose for which it was intended, and therefore the consequences and the natural and reasonable effect of a proposed construction are to be considered in ascertaining the legislative intention. *Brammall* v. *Larose*, 105 Vt. 345, 349, 165 Atl. 916, and cas. cit. The whole and every part of the enactment must be given attention (*In re Fulham's Estate*, 96 Vt. 308, 317, 119 Atl. 433), as well as other statutes *in pari materia*. *Newman* v. *Garfield*, 93 Vt. 16, 18, 108 Atl. 881, 5 A. L. R. 1507.

Again, as we have seen, P. L. 6710 makes it obligatory for a bank to submit an annual report containing certain prescribed items of information. With regard to such annual reports the commissioner has authority to call for all, or only a part, of such items, but he cannot require information concerning items other than those listed in the statute. He has, under P. L. 6711, authority to prescribe the form of the annual reports, but not the contents of them except that he need not ask for all of the items mentioned in the preceding section. But in a

special report the commissioner is not so confined, for he may require "such information relating to its [the bank's] affairs as he requests" (P. L. 6712), and thus he is given a wide discretion in making his inquiries. It may reasonably be assumed that the Legislature, in giving him this discretion, recognized that the commissioner might see fit to ask for some relatively trivial information which he might not consider of sufficient importance to warrant verification by an oath, and, therefore, intended the requirement of an oath to a special report also to rest in his discretion, and to become necessary only upon his request.

We construe P. L. 6712 to mean that special reports are not required to be under oath unless the commissioner so requests.

 The jurisdiction and authority of the commissioner of banking and insurance being wholly statutory, are limited to such powers as are conferred upon him by express legislative grant, or such as arise therefrom by implication as incidental and necessary to the full exercise of the powers granted. *DeGray* v. *Miller Bros. Construction Co.*, 106 Vt. 259, 267, 268, 173 Atl. 556. The principle is thus expressed by Mr. Justice Sutherland, in *Federal Trade Commission* v. *Raladam Co.*, 283 U. S. 643, 649, 75 L. ed. 1324, 51 Sup. Ct. 587, 590, 79 A. L. R. 1191, in speaking of the authority conferred by a federal statute, "Official powers cannot be extended beyond the terms and necessary implication of a grant. If broader powers be desirable, they must be conferred by Congress. They cannot be merely assumed by administrative officers, nor can they be created by the courts in the proper exercise of their judicial functions." The powers thus conferred upon public officers must be exercised according to the statute that creates them (*Mayor, etc., of Baltimore* v. *Porter*, 18 Md. 284, 79 A. D. 686, 689, 690), and the authority "to proceed in a particular way or only upon specific conditions implies a duty not to proceed in any manner than that which is authorized by law." *White* v. *Crandon,* 116 Fla. 162, 156 So. 303, 305.

 Under P. L. 6712 the authority of the commissioner of banking and insurance to request that a special report shall be sworn to has reference to an oath to be taken, not by one designated bank official, but by two. He has, under the statute, no power to compel a sworn verification by the treasurer alone,

and the report, if so executed, is not such a sworn report as is contemplated by the statute. Assuming but not deciding that the forms sent to the bank, with the letters of transmittal, may constitute an implied request for an oath, and that a specific request is not necessary under the statute, this request, being only that the treasurer should swear to their correctness, is not one which the commissioner is entitled legally to make, and the oath taken in accordance therewith is not "required by law" under P. L. 8651. Consequently a charge of perjury cannot be predicated upon it.

For the sake of clearness, it should be borne in mind that the defect is, not that the president did not join in the oath but that he was not requested to join in it. The illegality of the report, as a sworn document, does not arise from any omission or irregularity on the part of the officials of the bank, but from the failure of the commissioner strictly to confine himself within his statutory authority. In this respect the situation is distinguishable from that presented in *People* v. *Ostrander*, 64 Hun (N. Y.) 335, 19 N. Y. S. 324, 328, where a statute prescribed the verification of the semi-annual report of a bank by two of the principal officers thereof, and it was held (p. 331) that a defective oath by one such officer did not make that of the other extrajudicial, if otherwise conformable to the statute. There the oath by both officials was legally required; here, it was not.

The result is that there was error in the refusal to direct a verdict in favor of the respondent upon the first ground of the motion. It is not necessary to consider the other questions raised.

*Judgment reversed. Judgment that the respondent is not guilty and he is discharged.*