STATE HIGHWAY BOARD *v.* BENJAMIN GATES, AUDITOR OF ACCOUNTS.

October Term, 1938.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed October 20, 1938.

*Lawrence C. Jones,* Attorney General, for the petitioner.

*Benjamin Gates,* Auditor of Accounts, *pro se,* and *George L. Hunt* for the petitionee.

STURTEVANT, J. This is a petition for a writ of mandamus to compel the petitionee, Benjamin Gates, as state auditor of accounts, to issue his warrant upon requisition of the petitioner for all expenditures made from the four hundred thousand dollars increase to the appropriation to the state highway department made by the emergency board under authority of section 2 of No. 37 of the Acts of 1937. To this petition defendant has demurred and has briefed two grounds of demurrer, namely:

1. "The purpose, intent and meaning of section 2 of No. 37 of the Acts of 1937 under which the sum of four hundred thousand dollars was allocated to the State Highway Board are not such as legally to warrant or justify that action by the Emergency Board."

2. "Section 2 of No. 37 of the Acts of 1937 under which the Emergency Board allocated the sum of four hundred thousand dollars to the State Highway Board is invalid as an unlawful delegation of the legislative power of appropriation, contrary to section 27 of Chapter 2 of the Constitution of the State of Vermont."

The provisions of the general appropriation act of 1937 here material are as follows:

"PART I."

"Section 1. *Appropriations.* The sums hereinafter named or so much thereof as may be necessary, are hereby appropriated for the purposes specified in the following sections of this act, and when no time is expressly named during which any of such appropriations are to continue, such appropriations are hereby declared to be single appropriations and only for the purpose indicated.

"Section 2. *Limit.* The limit of each appropriation actually to be expended shall be subject to the final approval of the governor to be determined by him as the work authorized may progress and shall in no case exceed the maximum sums herein appropriated unless herein otherwise expressly provided. In view of the present emergency, the emergency board is hereby authorized and empowered during the fiscal years ending June 30, 1938, and June 30, 1939, to appropriate moneys in addition to the sums herein provided, for any department or endeavor of the state as may appear to said board to be necessary for the welfare of the state, and may decrease any appropriation and may transfer appropriations from one department to another, and may pledge the credit of the state to pay the same; provided, however, the total additional appropriations shall not exceed five hundred thousand dollars for any fiscal year, in addition to the sums the said board is now authorized by law to appropriate. Said annual sum or so much thereof as may be necessary is hereby appropriated for the purposes stated."

There are certain long-established and well-recognized rules for our guidance in the construction of this statute, namely:

A construction that leads to absurd consequences must always be avoided if possible. *Cady, Admr.* v. *Lang,* 95 Vt. 287, 293, 115 Atl. 140; *In re Howard's Estate,* 80 Vt. 489, 68 Atl. 513; *Morse* v. *Tracy,* 91 Vt. 476, 100 Atl. 923; *Brammall* v. *Larose,* 105 Vt. 345, 350, 165 Atl. 916.

"A presumption obtains against a construction that would render a statute ineffective or inefficient, or which would cause grave public injury or even inconvenience." *Cady, Admr.* v. *Lang, supra,* at page 293, 115 Atl. at page 142; *Bird* v. *U. S.,* 187 U. S. 118, 47 L. ed. 100, 23 Sup.. Ct. 42.

And again "every statute is understood to contain by implication, if it does not by its express terms, all such provisions as are necessary to effectuate its object and propose and to make effective the rights, powers, privileges, and jurisdiction

that it grants; and what is implied in a statute is as much a part of it as what is expressed." *In re Frank Demarco,* 77 Vt. 445, 447, 61 Atl. 36; *Matilda Saund* v. *Carl P. Saund,* 100 Vt. 387, 393, 138 Atl. 867; *Cady, Admr.* v. *Lang, supra,* at page 293, 115 Atl. 140.

█ "The intention of the legislature constitutes the law." *Smith & Son* v. *MacAulay,* 109 Vt. 326, 196 Atl. 281, 283; *Coral Gables, Inc.* v. *Christopher,* 108 Vt. 414, 418, 189 Atl. 147, 109 A. L. R. 474; *Town of Randolph* v. *Montgomery,* 109 Vt. 130, 194 Atl. 481, 484; *State* v. *Baldwin,* 109 Vt. 143, 194 Atl. 372, 374.

The defendant contends that the words "in view of the present emergency" as used in section 2 of the statute above quoted circumscribe the authority conferred upon the emergency board to allocate additional funds to any "department or endeavor of the state" mentioned in said act. He insists that such additional funds can be allocated only after said emergency board has first determined that the causes or circumstances making such additional funds "necessary for the welfare of the state" are brought about by the emergency which the Legislature recognized as existing at the time this act was passed. Defendant claims, therefore, that this act furnishes no authority for the allocation of the four hundred thousand dollars to the highway board for the purpose of repairing highways damaged as a result of the flood of 1938.

█ It clearly appears that any additional funds allocated to any "department or endeavor of the state" by authority of this statute are to be added to the sum specifically provided by said act for such "department or endeavor of the state." The original amount appropriated for such department or endeavor is increased by such allotment and when this is done such fund, including said increase or addition, is available for all of the uses and purposes of such department as was the original appropriation before said addition. This is entirely inconsistent with the theory that funds allocated to any department or endeavor of the State by authority of this act can only be used for purposes in some way connected with the emergency which existed at the time of the passage of the act.

74

■ The phrase "in view of the present emergency" is nothing more than an expression in the nature of a preamble to what follows. As here used, it means nothing more than "because of the lesson taught by experience in the present emergency."

It follows that the Legislature intended that if during the period covered by the act the emergency board should find that it had become necessary for the welfare of the State that any department or endeavor of the State for which a specific appropriation was made in this act should have additional money, it should then become the duty of the emergency board to allot to such department or endeavor of the State additional funds. The total amount which can be allotted on the authority of this statute in a single fiscal year is limited to five hundred thousand dollars.

■ As to the expression in this statute that "the emergency board is hereby authorized and empowered * * * to appropriate moneys," etc., it is sufficient to note that one meaning of the word "appropriate" is "to assign to a special purpose, to set apart." Oxford Universal English Dictionary, also Webster's International Dictionary. It is in this sense that this word is here used. The necessary "act of appropriation" by the Legislature concerning the funds in question here is contained in the last lines of the statute above quoted.

■ Our attention is called to P. L. 566. Referring to the emergency board, this statute provides: "The board shall have authority to make any expenditures necessitated by unforeseen emergencies and may borrow on the credit of the state for same." By P. L. 570 the limit which said board may appropriate under P. L. 566 is limited to one hundred thousand dollars. Under P. L. 566 the emergency board has no authority to assign funds to some other state department to be used and expended by such department for its general purposes, because the statute provides that the board is to make the expenditures, and this has been construed to mean that the emergency board must retain the general oversight of moneys to be expended under this statute. *Grout* v. *Gates*, 97 Vt. 434, 124 Atl. 76. The statute which we are considering is different in this respect because it expressly provides that the emergency board "is hereby authorized and empowered * * * to appropriate moneys in addition to the sums herein provided for any department or en-

deavor of the state * * *." Here the emergency board is not required to superintend the expenditure of the funds allotted under this section of the statute.

█ Our attention is directed to sec. 39 of the act under consideration. Defendant suggests that if the Legislature intended sec. 2 to authorize the emergency board to make the allotment here in question, then the Legislature has created two subordinate bodies having the same function. Sec. 39 makes the fund therein appropriated available for the purposes therein mentioned and among these appears the purpose, "to provide for expenditures required by law for which no appropriation is herein provided," while sec. 2 authorizes an allotment of additional funds only to those "departments or endeavors of the state" for which a sum is provided in the act. While other differences in these two sections appear, this one alone is sufficient to account for the presence of these two sections in this act. We are not concerned with the question whether the purpose of the Legislature might have been accomplished in some other way. We are dealing with the construction and legality of section 2 of this act and this only to the extent of questions raised by the defendant.

The fact that sec. 13 of this act No. 37 appropriates a sum to the department of highways brings that department within the provisions of sec. 2 of this act.

█ Applying the foregoing rules to section 2 of No. 37 of the Acts of 1937, it clearly appears that by a fair and reasonable construction of this section, full authority is thereby furnished to the emergency board to make the allotment of funds here in question. Therefore we proceed to consider this section of this statute as to delegation of legislative authority.

In considering the second question presented by the defendant there are other rules of statutory construction in addition to those hereinbefore mentioned which we must have in mind, namely:

█ "Every presumption is to be made in favor of the constitutionality of an act of the Legislature, and it will not be declared unconstitutional without clear and irrefragable evidence that it infringes the paramount law." *Village of Waterbury* v. *Melendy,* 109 Vt. 441, 199 Atl. 236, 239; *Village of St.*

*Johnsbury* v. *Aron,* 103 Vt. 22, 27, 151 Atl. 650; *Clark et al.* v. *City of Burlington,* 101 Vt. 391, 397, 143 Atl. 677; *Village of Hardwick* v. *Town of Wolcott,* 98 Vt. 343, 348, 129 Atl. 159, 39 A.L.R. 1222; *State* v. *Clement Nat. Bank,* 84 Vt. 167, 200, 78 Atl. 944, Ann. Cas. 1912D, 22; *In re Hackett,* 53 Vt. 354, 357.

▮ Our Constitution provides that the governmental powers of our State are divided among the three departments of government, the legislative, executive and judicial, and that each of these is separated from the others. However, this provision does not mean an absolute and entire separation of functions which would be impracticable, if not impossible. *Village of Waterbury* v. *Melendy, supra; Sabre et al.* v. *Rutland R. R. Co. et al.,* 86 Vt. 347, 85 Atl. 693, Ann. Cas. 1915C, 1269; *Burnett* v. *Green,* 97 Fla. 1007, 122 So. 570, 69 A.L.R. 244; *People* v. *Kelly,* 347 Ill. 221, 179 N. E. 898, 80 A.L.R. 890; *Searle* v. *Yensen,* 118 Neb. 835, 226 N.W. 464, 69 A.L.R. 257.

▮ Because of the similarity of the restrictions upon delegation of legislative authority implied in Article 1, section 1, and Article 1, section 8, of the federal Constitution, and those implied in the Vermont Constitution, the United States Supreme Court cases bearing upon this question are much in point.

In *Panama Refining Co.* v. *Ryan,* 293 U.S. 388, 421, 79 L. ed. 446, 55 Sup. Ct. 241, 248, the United States Supreme Court recently said: "The Congress manifestly is not permitted to abdicate or to transfer to others the essential legislative functions with which it is thus vested. Undoubtedly legislation must often be adapted to complex conditions involving a host of details with which the national Legislature cannot deal directly. The Constitution has never been regarded as denying to the Congress the necessary resources of flexibility and practicality, which will enable it to perform its function in laying down policies and establishing standards, while leaving to selected instrumentalities the making of subordinate rules within prescribed limits and the determination of facts to which the policy as declared by the Legislature is to apply. * * * In *Marshall Field & Co.* v. *Clark, supra* [143 U.S. 649, 692, 693, 12 Sup. Ct. 495, 36 L. ed. 294] * * * the Court referred with approval to the distinction pointed out by the Supreme Court of Ohio in Cincinnati, *Wilmington, etc., R. R. Co.* v. *Clinton County*

*Commissioners,* 1 Ohio St. 77, 88, between 'the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law.' Applying that principle, authorizations given by Congress to selected instrumentalities for the purpose of ascertaining the existence of facts to which legislation is directed have constantly been sustained. Moreover the Congress may not only give such authorizations to determine specific facts, but may establish primary standards, devolving upon others the duty to carry out the declared legislative policy; that is, as Chief Justice Marshall expressed it, 'to fill up the details' under the general provisions made by the Legislature. *Wayman* v. *Southard,* 10 Wheat. 1, 43, 6 L. ed. 253.'' See, also, *Schechter Corporation et al.* v. *United States,* 295 U.S. 495, 55 Sup. Ct. 837, 79 L. ed. 1570, 97 A. L. R. 947, and the many cases cited and discussed in that case and in *Panama Refining Co.* v. *Ryan, supra.*

In the case of *Marshall Field & Co.* v. *Clark,* 143 U. S. 649, 36 L. ed. 294, 12 Sup. Ct. 495, the court makes the following statement [page 505] : '' 'To assert that a law is less than a law, because it is made to depend on a future event or act, is to rob the Legislature of the power to act wisely for the public welfare whenever a law is passed relating to a state of affairs not yet developed, or to things future and impossible to fully know.' The proper distinction the Court said was this : 'The Legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend which cannot be known to the law-making power, and must, therefore, be a subject of inquiry and determination outside of the halls of legislation.' ''

That authority of law is indispensably necessary to an expenditure of state funds is without question. Section 27 of chapter 2 of our State Constitution provides that : ''No money shall be drawn out of the treasury unless first appropriated by act of legislation.'' In this constitutional provision no particular requirements are specified. Its purpose is ''to secure

78

regularity, punctuality and fidelity in the disbursement of public money.'' Story, Const., section 1342.

 Speaking on this subject in the case of the *City of Montpelier* v. *Gates et al.*, 106 Vt. 116, 121, 170 Atl. 473, 474, this Court stated: ''It is not and was not intended to be a restriction of the power of the Legislature over the public revenue. It is the province of that body to cast the appropriation in a mold of its own making. Under it no particular form of expression is necessary. No technical words are required. All that is essential is that the Legislature, by a valid enactment, shall assign to a particular use a sum of money from the public revenues.''

 In the case of *City of Montpelier* v. *Gates et al., supra,* this Court also stated: ''It is not necessary that the money be in the treasury at the time the appropriation is made. *People ex rel. McCauley* v. *Brooks, supra* [16 Cal. 11, 29]. Nor is it necessary that the exact sum be stated by the Legislature. *Highgate* v. *State,* 59 Vt. 39, 49, 7 Atl. 898. In the eye of the law, that is certain which can be made certain, and it is quite within the province of the Legislature to make an appropriation to cover a claim the amount of which is to be ascertained in the manner specified in the act.''

In *Sabre et al.* v. *Rutland Railroad Company et al.,* 86 Vt. 347, 85 Atl. 693, Ann. Cas. 1915C, 1269, the extent to which the Legislature may delegate authority to the public service commission was under consideration. It is there said, 86 Vt. 347, at page 365, 85 Atl. 693, at page 701: ''The General Assembly cannot delegate functions which are purely and strictly legislative, but, having by general law and by charters made legislative provisions of unquestionable constitutionality applicable to railroad corporations, it may confer upon the commission the power upon investigation to apply the general provisions of law to particular circumstances and situations, and may leave much of detail to the discretion of the commission.''

 Defendant contends that this act attempts to delegate to the emergency board the power to appropriate the funds necessary to make the act effective. In setting out those portions of the act which defendant claims are material he omits the following provisions contained in the last three lines of section 2, namely: ''Said annual sum or so much thereof as may be necessary is hereby appropriated for the purposes stated.''

Whatever might be the merits of defendant's argument addressed to this proposition, if the last above quoted provision were omitted, is not material here. This portion of the act is a full and complete answer to this contention of defendant. The Legislature has here appropriated all funds which it has authorized the emergency board to allocate to any department or endeavor of the State under the circumstances and for the purposes stated in the act.

True it is, as stated by this court in *Village of Waterbury* v. *Melendy, supra,* that "each case of questioned delegation of authority must, of course, depend upon the facts of that particular case."

Applying the rules and principles hereinbefore mentioned to the case before us, we must conclude that the allotment of additional funds to the highway department here in question is within the legislative intent as expressed in sections 1 and 2 of No. 37 of the Acts of 1937, and that defendant has pointed out nothing to us contained in said sections of this act which violate the provisions of our State Constitution.

All questions raised by defendant have been disposed of and none of his contentions are sustained. Therefore, we hold that:

1. The act of the emergency board in increasing the appropriation made by section 13 of No. 37 of the Acts of 1937 to the highway department by four hundred thousand dollars constitutes a constitutional allotment to the highway department.

2. Section 2 of No. 37 of the Acts of 1937 is not an unconstitutional delegation of legislative authority.

*Judgment that the prayer of the petition be granted without costs, and that a mandate issue forthwith directing the auditor of accounts to issue his warrant upon requisition of the state highway board for all expenditures made from the four hundred thousand dollars allocated to the highway department by the emergency board on October 6, 1938.*